# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 5756 | **DATE** | 9/5/2001 |
| **CASE TITLE** | Joseph Togba vs. County of Cook, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendants' motion for summary judgment [36-1] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | 2 | | **Document Number** |
| | No notices required. | | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | SEP 0 6 2001 | | |
| | Notified counsel by telephone. | | | date docketed | | 58 |
| | Docketing to mail notices. | | | | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | 9/6/2001 | | |
| | | | FILED FOR DOCKETING | date mailed notice | | |
| | IS | courtroom deputy's initials | 01 SEP -5 PM 4: 44 | IS | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH TOGBA,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 98 C 5756 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| **COUNTY OF COOK** and | ) | |
| **HERBERT HAMAKO,** | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED

SEP 6 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff, Joseph Togba, filed suit against Defendant, Cook County, Illinois, alleging discrimination and retaliation in violation of Title VII, and against Defendant, Herbert Hamako, alleging discrimination in violation of 42 U.S.C. § 1981. The discrimination claims arose out of Defendants' purported failure to pay Togba like similarly situated, non-Black employees from May 2, 1994 to April 28, 1997, and Defendants' decision to transfer Togba to a different position on April 28, 1997. The retaliation claim against Cook County emanated from Cook County's decision not to promote Togba to a Biochemist III position around March 1998, which was after Togba filed a charge with the EEOC.

Presently before this Court is Defendants' Motion for Summary Judgment. Defendants attack Togba's claims on multiple grounds, claiming that Togba has failed to assert claims under Title VII and § 1981 as a matter of law. For the following reasons, this Court grants Defendants' Motion for Summary Judgment.[1]

---

[1] The parties have consented to have this Court conduct any and all proceedings, including the entry of final judgment. 28 U.S.C. § 636(c); Local R. 73.1(b).

## I.  Background

Togba, a Black male, began working for Cook County Hospital on March 4, 1971, as a Medical Laboratory Technician I.[2]  Over the next twenty-two years Cook County promoted Togba several times, placing Togba in the position of Biochemist II/grade 16 of the Pediatric Lab in 1993.  Mahendra Gandhi, an Indian male, supervised the Pediatric Lab at the time.  Gandhi was classified as a Medical Technologist III/grade 18.

On September 16, 1993, one of Togba's supervisors rated Togba as excellent in quality of work, attitude, ability to learn, work habits, attendance, and punctuality.  (Togba Aff. Ex. A.)  Eager to move up the ladder, Togba submitted this evaluation with his application for an Immunology Tech III position.  To his disappointment, Togba did not receive the promotion.  He thought it might have been because of his race.

On November 1, 1993, Togba sent a letter to Cook County Board Commissioner John Stroger.  The letter read: "Gandhi has openly stated in the presence of all of us that he does not wish to have Blacks [working with him] but prefers East Indians."  (Togba Aff. Ex. B.)  In the next paragraph, Togba charged that Cook County was awarding promotions on the basis of race.

---

[2]  Unless indicated by a showing of disagreement, the facts listed herein are either uncontroverted or related in the light most favorable to Togba, the nonmoving party.  Only facts submitted in accordance with Local Rule 56.1 are included.  Therefore, statements and responses supported with citations to entire affidavits are disregarded.  *See Johnson v. Indopco, Inc.*, 887 F. Supp. 1092, 1095 (N.D. Ill. 1995).  "[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes . . . ."  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994).  Additionally, since replies to Local Rule 56.1(b)(3)(A) responses are not permitted under Local Rule 56.1(a), this Court disregards Defendants' Reply to Plaintiff's Response to Defendants' Local Rule 56.1(a)(3) Statement of Material Facts.

Togba appealed to Stroger to intervene and investigate the matter, but apparently Stroger took no action.

Before the close of 1993, Togba received news from Pia Davis, Vice-President of Local 73,[3] of an opportunity to perform as lead tech of the Pediatric Lab. Togba was interested, so he told Davis to set up an interview with Hamako, one of Togba's supervisors, regarding the position.

Upon hearing from Davis, Hamako contacted his supervisor, Dr. William Willoughby. With Willoughby's approval, Hamako scheduled an interview with Togba. At the interview, Hamako, again with Willoughby's approval, offered Togba the position of lead tech/acting supervisor of the Pediatric Lab. Togba accepted.[4]

On March 16, 1994, Dr. Ephraim Axelrod, Associate Chairmen of Clinical Laboratory Services, sent a memorandum to all Pediatric Lab personnel indicating that Togba would be the acting supervisor of the Pediatric Lab in the absence of Gandhi, and that Togba would become the supervisor of the Pediatric Lab when Gandhi left the Pediatric Lab. On April 20, 1994, Dr. Eugene Youkilis, another one of Togba's supervisors, sent a memorandum to the director of parking services indicating that Togba would need his own parking space because of his supervisor position.

---

[3] Local 73 was the union that represented Togba at all relevant times.

[4] Togba claims that he accepted the offer under the belief that he would be reclassified from Biochemist II/grade 16 to Biochemist III/grade 18 by taking the position. Defendants contend that nothing said at the meeting could have created this belief.

On May 2, 1994, Youkilis sent out another memorandum. Youkilis stated:

Effective as of [May 2, 1994] . . . Gandhi has been appointed to the position of Supervisor, QC/QA for all of the STAT Laboratories and will report directly to me. In this position, he will be responsible for monitoring all of the daily QC/QA activities in each of the STAT Laboratories and will work with each of the supervisors to assure full compliance with all aspects of the QC/QA programs.

Youkilis continued: "as of [May 2, 1994] . . . Togba will assume full and complete responsibilities as Supervisor, Pediatrics/Neonatology Laboratory." (Defs.' Ex. 8.) The letter was sent to all laboratory supervisory personnel. So, as of May 2, 1994, Togba had a new title and additional responsibilities. Unfortunately for him, both came without an increase in salary, which he thought was unfair.[5]

The Pediatric Lab passed inspection under Togba's supervision in 1994,[6] and, as far as Youkilis was concerned, in 1994 Togba did an "adequate job." (Defs.' Resp. Pl.'s 56.1(b)(3)(B) Statement of Additional Facts ¶ 27.) A problem did arise near the end of January 1995 when Togba failed to maintain the electrode membrane of a laboratory instrument. Ronald Baumann, Director of Clinical Engineering, sent a memorandum to Youkilis urging him to provide additional training to Togba and other technologists. It is unclear whether Togba or anyone else received the training.

---

[5] Togba argues that this was especially unfair because he kept receiving assurances that he would receive a raise. Defendants assert that no such assurances were ever made.

[6] Defendants argue that, even though the Pediatric Lab passed inspection, it was not because of Togba. Togba disagrees, saying that he "satisfactorily performed his duties." (Pl.'s Resp. Defs.' Local Rule 56.1(a)(3) Statement ¶¶ 72-73, 75.)

On January 2, 1996, Togba sent a letter to Orlando Jones, Chief of Staff of the Cook County Board of Commissioners, requesting higher compensation as a Biochemist III/grade 18. Considering that salary corresponded to grade level, Togba could have received higher compensation in one of two ways: either Togba could have been promoted as requested in the January 2 letter,[7] or Togba's position could have been reclassified from Biochemist II/grade 16 to Biochemist III/grade 18.[8] Prior to this date, Togba never applied for a posted Biochemist III/grade 18 position, nor did he formally request that his position be reclassified.

On January 25, 1996, Willoughby responded to Togba's January 2 letter, focusing on the reclassification issue. Willoughby explained that Togba's Biochemist II/grade 16 position had not been reclassified to Biochemist III/grade 18 because of Togba's performance problems. Specifically, Willoughby mentioned that Togba could not satisfactorily perform quality control responsibilities as a supervisor despite receiving adequate training. In conclusion, Willoughby stated that Togba would soon be replaced and that Togba would be reassigned within the department where his abilities would be better used.

Upon receipt of Willoughby's memorandum, Ruth Rothstein, Chief of the Bureau of Health Services, responded to Jones (who apparently contacted Rothstein) in a letter, stating that

---

[7] Promotions were covered by the collective bargaining agreement in place between the union and Cook County and were subject to the bidding process. A promotion was dependent on several factors including the employee's knowledge, skill and abilities, work experience, work performance, education, training, and seniority. (*See id.* ¶¶ 39, 41.)

[8] Reclassifications were also covered by the collective bargaining agreement. A request for reclassification had to be in writing. Although requests were usually submitted by department heads, employees could make requests, too. Reclassifications were subject to approval by the Cook County Board. (*See id.* ¶¶ 49-51, 54.)

Togba was not performing satisfactorily as a supervisor and that Togba had received verbal counseling about his performance on numerous occasions. Rothstein attached Willoughby's memorandum to the letter.

A March 5, 1996 memorandum from Narayan Torke, one of Togba's supervisors, to Hamako assessed Togba's supervisory capabilities. In Torke's opinion, Togba needed meaningful training in several critical areas to be a successful supervisor, namely, quality control, maintenance procedure, and leadership. Eight days later, Hamako contacted Togba via memorandum about his job performance. Attached to the memorandum was (1) a list of Togba's weaknesses as evaluated by Togba's supervisors over the past year, (2) a supervisor job description, and (3) a supervisor evaluation form. Hamako gave Togba the following ultimatum: either enroll in a structured training program or resign as supervisor.

On March 15, 1996, Togba received a favorable review from Suma Pyati, Chairman of the Division of Neonatology. Pyati informed Hamako that, in Pyati's opinion, Togba was performing satisfactorily as supervisor of the Pediatric Lab—e.g., test results were conveyed in a timely manner and Togba conducted himself in a helpful and cooperative manner.

Evidently Hamako disagreed with Pyati: on March 27, 1996, Hamako asked Togba to resign, relieving him of all supervisory responsibilities. Until Hamako could find a replacement, however, Hamako asked Togba to continue working in the Pediatric Lab. Hamako promised to find Togba another position commensurate with his skills and experience.

But "to maintain continuity" through the next inspection, Hamako reversed his decision, leaving Togba as supervisor of the Pediatric Lab. (Hamako Dep. Ex. 27 at 2.) Shortly thereafter, Togba completed ten management classes to improve his skills and abilities as a supervisor.

On June 12, 1996, Youkilis evaluated Togba and rated him excellent in the following categories: job skills, work habits, work quality, work quantity, and ability to work with others.[9] (Youkilis Dep. Ex. 8.) One month later, however, Togba was criticized for failing to complete certain forms before ordering supplies; and, in December, Davis became upset after discovering that Togba was disciplining technologists who worked in the Pediatric Lab. Davis told Hamako that only supervisors—not lead technologists—could discipline technologists. On April 22, 1997, Torke reminded Togba that he could not discipline employees unless Torke first approved. Six days after that, Togba's days as supervisor of the Pediatric Lab came to an end.

On April 28, 1997, Togba was transferred from the Pediatric Lab to the Consolidated STAT Division, another laboratory. The decision was conveyed at a meeting attended by Hamako, Torke, Union Steward Theresa Johnson, and Togba, and it was memorialized in a memorandum. The memorandum, authored by Hamako, listed two bases for Togba's transfer: (1) supervisors cannot remain in their assigned location for more than five years and (2) supervisors must be in the grade 18 or higher. (Defs.' Ex. L14.) Hamako then praised Togba for his hard work and determination, never mentioning that Togba failed to perform up to expectations.[10]

---

[9] Defendants contend that Youkilis only evaluated Togba's performance as a Biochemist II. (Defs.' Resp. Pl.'s 56.1(b)(3)(B) Statement of Additional Facts ¶ 33.) Togba contends that Youkilis evaluated Togba as a supervisor.

[10] Defendants claim that Hamako refrained from criticizing Togba's work performance in the memorandum so as to avoid embarrassing Togba and to avoid hindering Togba's ability to find work. (Johnson Dep. at 89-95.)

After the transfer Togba no longer had supervisory duties, but he remained a grade 16, retaining his same salary. Saiyed Salauddin, a White male, supervised the employees of the Pediatric Lab. Salauddin was a grade 18.[11] Within a short time, Salauddin resigned and Zeniada Maguigad replaced Salauddin as supervisor. Maguigad, a Filipina female, was also a grade 18.

Togba's time at the Consolidated STAT Division was rather brief. Within one week, Togba requested a transfer to the Biochemistry Division seeking a nonsupervisory position. The transfer was granted with Togba retaining his same grade and salary.

On May 2, 1997, Togba filed a grievance with the union in connection with the April 28, 1997 transfer and an alleged assurance of a salary increase as per the April 28 transfer memorandum. Togba sought reinstatement to his former position as supervisor of the Pediatric Lab and reclassification to Biochemist III/grade 18 or higher. (Defs.' Ex. 16.) Youkilis responded to the grievance by dismissing any promise of promotion or reclassification and by referencing the bases for transfer as listed in the April 28 transfer memorandum. Ultimately, the union decided not to grieve Togba's concerns.

As a result, on May 13, 1997, Togba filed a charge with the Illinois Department of Human Rights and the EEOC alleging discrimination and retaliation based on race and national origin. The discrimination and retaliation[12] claims related to the April 28, 1997 transfer. A September 1997 EEOC charge, filed by Togba, replaced the May EEOC charge. It contained

---

[11] Whether Salauddin replaced Togba is contested. *See infra* pp. 16-17.

[12] Togba had filed an EEOC charge in 1990. (Second Am. Compl. Ex. F.) Togba alleged a casual link between the resolution of his 1990 EEOC charge and the April 28, 1997 transfer. (*Id.*)

allegations of race and sex discrimination (instead of race and national origin discrimination), but it did not contain an allegation of retaliation.

On November 17, 1997, Togba applied for an Administrative Assistant IV position, which was posted by Cook County's Department of Human Resources. For one reason or another, the Administrative Assistant position was canceled and thus no individual was selected.

A March 10, 1998 letter from Togba to Stroger invited action to make Togba a supervisor and to promote Togba to a grade 18. Stroger responded within weeks stating that it would not be appropriate for him to take any action on Togba's behalf in light of the pending state and federal administrative investigations initiated by Togba. (Togba Aff. Ex. G.)

Togba applied for two more positions at Cook County Hospital on March 27, 1998—a Biochemist III position and a Biochemist IV position, both of which were posted by Cook County's Department of Human Resources. The Biochemist IV position was awarded to the more qualified Corazon Arreola, an Asian male; and the Biochemist III position was awarded to Sheela Naik, an Indian female.

On September 15, 1998, Togba filed a complaint in federal court upon receiving his notice of right to sue from the EEOC. Togba amended the complaint on February 1, 1999. Both complaints listed Cook County and Hamako as Defendants, and they contained allegations against Cook County relating to discrimination and retaliation under Title VII and allegations against Hamako relating to discrimination under 42 U.S.C. § 1981.

About two months later, Togba submitted the final application that appears in the record. This application was submitted for an Administrative Assistant IV position, also posted by Cook

County's Department of Human Resources. The Administrative Assistant position was awarded to the more qualified Donald McDaniels, a Black male.

On June 15, 1999, Togba filed a Second Amended Complaint, which was similar in all respects to Togba's First Amended Complaint. It contained the following claims: (1) Cook County discriminated against Togba in violation of Title VII by refusing to classify him as a grade 18; (2) Cook County discriminated against Togba in violation of Title VII by demoting and transferring him on April 28, 1997; (3) Cook County retaliated against Togba in violation of Title VII by refusing to promote Togba after he filed a charge with the EEOC; (4) Hamako discriminated against Togba in violation of § 1981 by refusing to classify him as a grade 18; and (5) Hamako discriminated against Togba in violation of § 1981 by demoting and transferring him on April 28, 1997.

That brings us to Defendants' Motion for Summary Judgment. Defendants contend that none of Togba's claims should go to a jury because Togba's claims are without merit as a matter of law. We agree.

## II.    Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is a fact that may affect the outcome of a claim under the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue as to a material fact is not created unless there is sufficient evidence for a jury to return a

verdict in favor of the nonmoving party. *Jackson v. Chi. Firefighters Union Local #2*, 99 C

1651, 2001 WL 726992, at *5 (N.D. Ill. June 27, 2001) (quoting *La Preferida, Inc. v. Cerveceria*

*Modelo, S.A. de C.V.*, 914 F.2d 900, 905 (7th Cir. 1990)). In determining whether a genuine

issue of material fact exists, the court construes all facts in the light most favorable to the

nonmoving party and draws all reasonable inferences in that party's favor. *Shank v. William R.*

*Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999).

    In cases where the nonmoving party bears the burden of proof at trial, like the instant one,

the moving party bears the initial burden of demonstrating that there is no evidence to support an

element of the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Provided that burden is met, the nonmoving party must show that evidence establishes the

existence of that element essential to his claim. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993)

(quoting *Celotex Corp.*, 477 U.S. at 322.) If the nonmoving party fails to meet this burden,

summary judgment is warranted because, of course, no reasonable juror could find in the

nonmoving party's favor.


### III.    Discussion

**A.    Title VII Claims**

    1.    Discriminatory Failure to Classify As a Grade 18

    Before getting into the thick of it, Togba's "failure to classify" claim and its chameleonic

qualities deserve some attention. Depending on the brief, this claim seesawed as a failure to

promote claim and unequal pay claim. Although Togba cleared things up in his response brief

by stating that "the proper analysis of [his] claim is as an unequal pay claim," he muddied the

waters a bit at oral argument, asking this Court to analyze the claim as both a failure to promote and unequal pay claim.

The devolution is understandable, considering Togba's situation. In May 1994, Togba received a new title and took on additional responsibilities—an event commonly designated a promotion. But for the next 3.5 years or so, Togba's pay check remained the same, so in this sense the May 1994 event meant nothing at all—an incongruence that Togba wanted Defendants to solve.

Regardless of what label we place on Togba's discrimination claim, Togba's decision to proceed on a disparate treatment theory requires him to present evidence of racial animus to survive summary judgment. *See Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1003-04 (7th Cir. 1994); *Meckenberg v. N.Y. City Off-Track Betting*, 42 F. Supp. 2d 359, 376-79 (S.D.N.Y 1999); *Johnson*, 887 F. Supp. at 1096-97, 1098-99. Hence, we scour Togba's submissions for any evidence of racial discrimination—either direct or indirect—that advances Togba's claim. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973); *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 686-88 (7th Cir. 1998). Glaringly, we find none.

The only candidate for direct evidence of discrimination is Gandhi's remark that "he does not wish to have Blacks [working with him] but prefers East Indians." (Togba Aff. Ex. B.) Surely the remark evinces bigotry. But bigotry is not actionable under Title VII unless it causes injury to the plaintiff. *Chambers*, 17 F.3d at 1004. In other words, in the context of this claim, for Togba to rely on Gandhi's remark as direct evidence of discrimination, Togba needs to show that Gandhi had some authority to classify Togba as a grade 18 and that Gandhi's remark related to the decision not to classify Togba as a grade 18. *See Jackson*, 2001 WL 726992, at *10

("Discriminatory statements proffered as direct evidence are relevant 'only if they are both made by a decisionmaker and related to the employment decision at hand.'" (quoting *Stopka*, 141 F.3d at 688)). Without any such evidence before us, we find that Gandhi's remark, whenever and to whomever it was made, is irrelevant to show direct evidence of discrimination; the remark caused no injury to Togba. *See Chambers*, 17 F.3d at 1004.

Togba's display of indirect evidence of discrimination is also insufficient to get his claim to a jury. To establish a prima facie case of discrimination using the *McDonnell Douglas* framework, a plaintiff must show that he was a member of a protected class and that he was treated less favorably than similarly situated members who were outside the protected class. *Chambers*, 17 F.3d at 1003-04; *Meckenberg*, 42 F. Supp. 2d at 376-79; *Johnson*, 887 F. Supp. at 1096-97, 1098-99. The central question is whether the employer would have taken the same action had the employee been of a different race, all other conditions remaining the same. *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 158 (7th Cir. 1996).

Contrary to Defendants' assertion, this does not require Togba to show that he was treated less favorably than a nonminority employee, in this case a non-Indian. (*See* Defs.' Mot. Summ. J. at 10-11.) If that were the case, then an employer could discriminate against one racial minority group, say Blacks for example, by treating another racial minority group, like Indians, more favorably without running afoul of Title VII. Such a reading of Title VII is wholly incredible, as the statute prohibits discrimination against an individual on the basis of his race. *Carson*, 82 F.3d at 158.

Togba is unable to make out a prima facie case of discrimination under the *McDonnell Douglas* framework for a different reason: Togba cannot show that Cook County treated a

similarly situated, non-Black employee more favorably than Cook County treated him. The non-Black employees that allegedly received more favorable treatment than Togba are nine-odd employees who became grade 18s from 1996 through 1998, and Gandhi, Salauddin, and Maguigad, all three of whom supervised the Pediatric Lab at some point in time. In light of this, and only this, Togba asks us to jump to the conclusion that Togba and all of these individuals are similarly situated. This we cannot do.

Establishing a sufficient level of similarity under the fourth prong of the *McDonnell Douglas* framework is not so easy. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). In terms of Togba's failure to classify claim, we think that, to establish a sufficient level of similarity, Togba needs to point to a non-Black, grade 18 employee who became a grade 18 employee upon accepting, or at least within three years or so of accepting, a position as supervisor of the Pediatric Lab, or perhaps one similar thereto, and who, at the time of becoming grade 18, had qualifications—i.e., education, work experience, seniority, etc.—similar to Togba's qualifications during the relevant time period. Of course, evidence of a common decisionmaker who participated in these salary decisions—the decisions affecting Togba and the other employee—would help to establish similarity. *See id.* at 618. Surely Togba's evidence comes nowhere close to hitting this mark.

As a result, we find no reason to infer that race was a motivating factor in Cook County's decision not to pay Togba as a grade 18. After considering all of Togba's evidence, too many legally permissible inferences can be drawn, based on obvious explanations, to account for any differences between Cook County's treatment of Togba vis-a-vis anyone else. Therefore, this Court grants Cook County's Motion for Summary Judgment on this claim.

## 2. Discriminatory Transfer/Demotion

We also do not believe that Togba's discriminatory transfer/demotion claim should go to

a jury. At the outset, we end the battle of labels between the parties as to this claim.[13] Based on

the fact that before April 1997 Togba had supervisory responsibilities, while after April 1997 he

had none, we think that this claim is most accurately characterized as a demotion claim. After

all, Togba's supervisory responsibilities were not merely altered, they were taken away. *Cf.*

*Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 135-36 (7th Cir. 1993) (finding

that the plaintiff, who was transferred from one position to another, did not suffer an adverse

employment action because, although the plaintiff's responsibilities changed, the plaintiff's

responsibilities at the new job were no less significant than they were at the old job).

The characterization of Togba's claim as a demotion claim affects our analysis under the

*McDonnell Douglas* framework, on which Togba has decided to proceed with respect to this

claim. *See Collier v. Budd Co.*, 66 F.3d 886, 890 (7th Cir. 1995) ("The prima facie case . . . is a

flexible standard that 'is not intended to be rigidly' applied." (quoting *Mitchell v. Worldwide*

*Underwriters Ins. Co.*, 967 F.2d 565, 567 (11th Cir. 1992))). Instead of the fourth element of

Togba's prima facie case consisting of being able to show that similarly situated, non-Black

employees were treated more favorably (as it would if this were a discriminatory transfer claim),

Togba need only show that Cook County sought a replacement for the same position that Togba

---

[13] Throughout this litigation, the parties have affixed different labels to this claim. Togba
has labeled this claim as a discriminatory demotion/transfer or discriminatory transfer/demotion
claim, depending on the filing. (*See* Second Am. Compl. at 7; Pl.'s Mem. Law Opp'n Mot.
Summ. J. at 9-10.) In contrast, Defendants have insisted that this is a discriminatory transfer
claim. (*See* Defs.' Mot. Summ. J. at 9-11; Defs.' Reply Br. Supp. Mot. Summ. J. at 9-10.)

held.[14]  *See King v. WiseWay Super Ctr., Inc.*, 954 F. Supp. 1289, 1293 (N.D. Ind. 1997); *cf. Kale v. Combined Ins. Co. of Am.*, 861 F.2d 746, 760 (1st Cir. 1988) (discriminatory firing under ADEA); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir. 1979) (same).

As replacements, Togba points only to Salauddin, a White male, and Maguigad, a Filipina female.  (*See* Pl.'s Resp. Defs.' Local Rule 56.1(a)(3) Statement ¶¶ 106, 116-17; Defs.' Resp. Pl.'s 56.1(b)(3)(B) Statement of Additional Facts ¶¶ 44-47.)  However, Togba fails to present any evidence that either Salauddin or Maguigad actually replaced him.  Admittedly, Togba testified at his deposition that Salauddin told Togba that Salauddin replaced Togba, but this is hearsay.[15]  On summary judgment, the nonmoving party cannot rely on hearsay. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial.").  Togba's conclusory statements at his deposition and in his affidavit to the effect that Salauddin and Maguigad "replaced" Togba are similarly inadequate to withstand summary judgment.[16]

---

[14]  The other three elements of Togba's prima facie case of discriminatory demotion are the same as that for discriminatory transfer: that Togba was a member of a protected class, that Togba suffered an adverse employment action, and that Togba satisfactorily performed his duties.  *See King v. WiseWay Super Ctr., Inc.*, 954 F. Supp. 1289, 1293 (N.D. Ind. 1997).

[15]  The statement made at the deposition is as follows:

Q:    In April of 1997, when you were transferred [Salauddin] took your
      position?
A:    [Salauddin] came to pediatric.  And in fact, he had called me and
      told me that, yes.

(Togba Dep. at 148.)

[16]  The statements made at the deposition are as follows:

(continued...)

Conclusions cannot create issues of fact on summary judgment because, like hearsay, conclusions do not comply with Rule 56(e).[17] *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998); *Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1311 (7th Cir. 1997); *Sample*

---

[16](...continued)

Q:     Who's in place of you?
A:     [Zeniada] Maguigad.

\*   \*   \*

Q:     Who is the non-Black employee . . . who replaced you?
A:     Mr. [Salauddin].

\*   \*   \*

Q:     Why do you believe that [you were discriminated against] because of your race?
A:     Because I didn't see any other person that came and replaced me beside White.

(Togba Dep. at 70, 152, 161.)

And the statements made in the affidavit are as follows:

"On April 28, 1997, [Saiyed Salauddin] was transferred from his position as supervisor of the MICU/SICU Labs to replace me as supervisor of the PEDs Lab."

"[Zeniada] Maguigad, White, replaced me after [Salauddin] retired or went on leave."

(Togba Aff. ¶¶ 18-19.)

    [17] It is hard to believe that Togba has presented no evidence on this issue, in the way of affidavits or otherwise, in view of all the discovery that has taken place.

v. *Aldi, Inc.*, 61 F.3d 544, 549 (7th Cir. 1995). Accordingly, Togba has failed to make out a

prima facie case of discriminatory demotion.[18]


### 3. Retaliation

Cook County is entitled to summary judgment on Togba's retaliation claim as well. Title

VII makes it unlawful "for an employer to discriminate against any of his employees . . . because

[the employee] has opposed any practice made an unlawful employment practice [by Title VII]."

42 U.S.C. § 2000e–3(a). Similar to other Title VII claims, a plaintiff may rely on either direct or

indirect evidence to support a claim of retaliation. *Fyfe v. City of Fort Wayne*, 241 F.3d 597, 601

(7th Cir. 2001).

Direct evidence is "'evidence which if believed by the trier of fact, will prove the

particular fact in question without reliance on inference or presumption.'" *Cowan v. Glenbrook

Sec. Servs., Inc.*, 123 F.3d 438, 443 (7th Cir. 1997) (quoting *Plair v. E.J. Brach & Sons, Inc.*, 105

F.3d 343, 347 (7th Cir. 1997)). As we stated earlier, direct evidence is relevant only if it reflects

the intent of the decisionmaker and is related to the employment decision at issue. *See supra*

pp.12-13.

To establish a prima facie case of retaliation under the *McDonnell Douglas* framework, a

plaintiff must show that he engaged in statutorily protected expression—e.g., that he filed an

EEOC charge—that he suffered an adverse employment action, and that there is a casual link

---

[18] We note the lack of any evidence showing that Cook County treated a similarly
situated, non-Black employee more favorably than Togba, only to point out that, even if we were
to view this claim as a discriminatory transfer claim, it would fail. *See Greenslade v. Chi.
Sun-Times, Inc.*, 112 F.3d 853, 863 (7th Cir. 1997).

between the protected expression and the adverse employment action. *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1146 (7th Cir. 1997); *Brenner v. Brown*, 36 F.3d 18, 19 (7th Cir. 1994). Otherwise stated: the plaintiff must show that the defendant would not have taken the adverse employment action but for the protected expression. *Gleason*, 118 F.3d at 1146 (quoting *McKenzie v. Ill. Dept. of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996)).

Based on admissions contained in Togba's Response to Defendants' Local Rule 56.1(a)(3) Statement, the sole question for us to decide is whether Cook County violated Title VII by refusing to promote Togba to the Biochemist III position after receiving Togba's March 27, 1998 application. (*See* Pl.'s Resp. Defs.' Local Rule 56.1(a)(3) Statement ¶¶ 121-22, 124.) As direct evidence of Cook County denying Togba's application because of Togba's pending EEOC charge, Togba cites to Stroger's March 27, 1998 letter, in which Stroger stated that he would be unable to assist Togba in obtaining reinstatement to the supervisor position, or assist Togba in receiving a salary increase, because of the pending state and federal administrative investigations initiated by Togba. (*See* Pl.'s Mem. Law Opp'n Mot. Summ. J. at 13; Togba Aff. Ex. G.)

We find that Stroger's letter is not indicative of Cook County's intent to retaliate for two reasons. First, Togba has presented no evidence linking Stroger to the Biochemist III hiring decision, much less that Stroger was even aware of the available Biochemist III position. *See Casarez v. Burlington N./Santa Fe Co.*, 193 F.3d 334, 339 (5th Cir. 1999). Second, instead of revealing Cook County's intent to retaliate against Togba for filing the EEOC charge, the content of Stroger's letter actually reveals Cook County's intent not to retaliate: as Stroger mentioned in the letter, he did not want to comment on or become involved in Togba's situation because administrative investigations were well underway.

That leaves Togba with indirect evidence consisting solely of the timing of two events—the filing of the EEOC charge and the denial of the promotion. We know that Togba filed the EEOC charge on May 13, 1997 (later replaced by the September 1997 filing, alleging similar facts). We also know that Togba applied for the Biochemist III position on March 27, 1998. But we do not have any idea when Cook County hired Naik for the Biochemist III position, thereby refusing to hire Togba for the position.

Just comparing the EEOC filing date and the date of Togba's Biochemist III application, we are already looking at ten months, which, standing alone, hardly seems suspicious. *See Hughes v. Derwinski*, 967 F.2d 1168, 1174 (7th Cir. 1992) (holding that a four-month gap is too large to create an inference of retaliation). In toto, the absence of any facts linking Togba's EEOC charge to the Biochemist III hiring decision, coupled with the lack of suspicious timing, demonstrates that summary judgment is appropriate here. *See Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) ("The mere fact that one event preceded another does nothing to prove that the first event caused the second.").

### B.  Section 1981

Lastly, we address Togba's two claims against Hamako under § 1981. Section 1981(a) provides all persons with the same right to make and enforce contracts as is enjoyed by White people, and it provides a private right of action to enforce that right. 42 U.S.C. § 1981(a). As § 1981 covers the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, this statute serves as a powerful tool to eradicate intentional discrimination in the workplace—in

much the same manner as its comrade, Title VII. *See Benjamin v. Katten, Muchin & Zavis*, No. 95 C 5077, 1998 WL 25757, at *5 (N.D. Ill. Jan. 12, 1998); *Behnia v. Shapiro*, 961 F. Supp. 1234, 1237 (N.D. Ill. 1997); *see also Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 748 (7th Cir. 1985).

The standards governing liability under Title VII actions equally apply to § 1981 claims. *Ramsey v. Am. Air Filter Co.*, 772 F.2d 1303, 1307 (7th Cir. 1985). Hence, a plaintiff may either present direct evidence or indirect evidence of discrimination, utilizing the *McDonnell Douglas* framework. *Riad v. 520 S. Mich. Ave. Assocs. Ltd.*, 78 F. Supp. 2d 748, 757-58 (N.D. Ill. 1999). The approach to individual liability, however, differs: supervisors may be held liable under § 1981 for intentional discrimination, but under Title VII they may not. *Sullivan v. Presstronics Inc.*, No. 96 C 7436, 1997 WL 327126, at *2 (N.D. Ill. June 11, 1997). For individual liability to attach under § 1981, the individual must have been "personally involved in the acts of intentional discrimination of which the plaintiff complains." *Id.* Knowledge of the discriminatory act's occurrence is not enough; rather, the individual himself must participate in the discriminatory act. *Behnia*, 961 F. Supp. at 1238; *Johnson v. Res. for Human Dev., Inc.*, 843 F. Supp. 974, 978 (E.D. Pa. 1994) (holding that individual liability under § 1981 requires a showing of an "affirmative link" between the individual and the discriminatory act).

Even assuming Hamako's participation in decisions affecting Togba throughout the relevant time period, regardless of which hat Hamako wore at the time, Togba's claims against Hamako are necessarily doomed based on our conclusions set forth in Section III(A)(1)–(2). *See Freeman v. Chi. Park Dist.*, 189 F.3d 613, 618 (7th Cir. 1999) ("A finding of lack of discriminatory animus on a Title VII claim will preclude recovery on a § 1981 claim."); *Rush v.*

*McDonald's Corp.*, 966 F.2d 1104, 1119 (7th Cir. 1992). Briefly, Togba has failed to show that Hamako treated similarly situated, non-Black employees more favorably than Togba in any way. Accordingly, this Court grants Hamako's Motion for Summary Judgment.

## IV.    Conclusion

For the reasons stated, Defendants' Motion for Summary Judgment is granted.

### ENTER ORDER:

*[signature]*

**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:**  September 5, 2001.

Copies have been mailed to:

SCOTT J. FRANKEL, Esq.               KATHERINE A. PATERNO
Frankel & Cohen                      Assistant State's Attorney
77 West Washington Street            500 Richard J. Daley Center
Suite 1711                           Chicago, IL  60602
Chicago, IL  60602

Attorney for Plaintiff               Attorney for Defendants